# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 16, 2009

Charles R. Fulbruge III
Clerk

No. 08-20198

CHAVA WHITE, Individually And As Next Friend of Evan White,

Plaintiff–Appellant,

v.

ST. LUKE'S EPISCOPAL HEALTH SYSTEM,

Defendant–Appellee.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:07-CV-3771

Before GARWOOD, GARZA, and OWEN, Circuit Judges.

PER CURIAM:[*]

Chava White, a participant in St. Luke's Episcopal Health System's (St. Luke's) medical plan, was denied coverage for neurofeedback therapy based on the policy's "nonmedical services" exclusion. Because we conclude that all neurofeedback is a nonmedical service under the terms of the plan, we affirm the district court's grant of summary judgment in favor of St. Luke's.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I

Chava White is an employee of St. Luke's and a participant in its Medical, Dental & Life Plan (Plan). White's son, who is also a Plan beneficiary, is afflicted by a congenital condition known as Familial Dysautonomia (FD). FD is a progressive genetic disorder that causes dysfunction of the autonomic and sensory nervous systems. White's son suffers from FD-related constipation and as a result experiences life-threatening swings in blood pressure. Accordingly, his primary-care physician prescribed EEG neurofeedback therapy as medically necessary to help manage the constipation problem and thus reduce the incidence of life-threatening autonomic crises.

White applied for coverage of the neurofeedback under the Plan. The Summary Plan Description defines "Covered Expenses" to include charges that are medically necessary for treatment of injury or sickness. It also contains a number of exclusions, including one for "nonmedical counseling or ancillary services, including . . . neurofeedback." Based on this exclusion, St. Luke's denied White's application.

After exhausting her administrative remedies, White initiated suit. The district court, concluding that neurofeedback was not covered under the Plan, granted summary judgment to St. Luke's. White now appeals.

## II

We "review[] summary judgments *de novo* in ERISA cases, applying the same standards as a district court."[1] An administrator's denial of benefits under an ERISA plan is "reviewed under a *de novo* standard unless the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[2] Because St. Luke's is vested with

---

[1] *Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 392 (5th Cir. 2006).

[2] *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *accord Lain v. UNUM Life Ins. Co. of Am.*, 279 F.3d 337, 342 (5th Cir. 2002).

such discretionary authority, its decision to deny benefits is reviewed only for abuse of discretion.[3] However, St. Luke's acts as both insurer and administrator of the Plan and thus operates under a "conflict of interest" that should "be weighed as a factor" in determining whether an abuse of discretion occurred.[4]

Reviewing an administrator's decision for abuse of discretion may involve a two-step analysis.[5] "First, a court must determine the legally correct interpretation of the plan. If the administrator did not give the plan the legally correct interpretation, the court must then determine whether the administrator's decision was an abuse of discretion."[6] If the administrator's interpretation of the plan is legally correct, no abuse of discretion could have occurred, and our inquiry ends.[7]

In determining whether an administrator's interpretation of a plan is legally correct, we consider three factors: "(1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan."[8] Of these, the most important factor to consider is whether the administrator's interpretation of the plan is consistent with a fair reading of the plan.[9]

---

[3] *See Robinson*, 443 F.3d at 395.

[4] *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2348, 2350 (2008) (emphasis and internal quotation mark omitted); *accord Crowell v. Shell Oil Co.*, 541 F.3d 295, 312 (5th Cir. 2008).

[5] *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 637 (5th Cir. 1992).

[6] *Id.*

[7] *Crowell*, 541 F.3d at 312.

[8] *Id.* (citing *Threadgill v. Prudential Sec. Group, Inc.*, 145 F.3d 286, 292-93 (5th Cir. 1998)).

[9] *Id.* at 313.

"If [the] court concludes that the administrator's interpretation is incorrect, the court must then determine whether the administrator abused his discretion."[10] "Three factors are important in this analysis:

(1) the internal consistency of the plan under the administrator's interpretation,

(2) any relevant regulations formulated by the appropriate administrative agencies, and

(3) the factual background of the determination and any inferences of lack of good faith."[11]

White does not argue that St. Luke's has not uniformly construed the Summary Plan Description, nor does she allege that there are any unanticipated costs resulting from differing interpretations. Accordingly, as is often true in ERISA cases,[12] the parties' dispute concerns the administrator's interpretation of the plan. "When interpreting plan provisions, we interpret the contract language in an ordinary and popular sense as would a person of average intelligence and experience, such that the language is given its generally accepted meaning if there is one."[13]

## III

The terms of coverage under the Plan are summarized in the Summary Plan Description issued by CIGNA HealthCare (CIGNA). The general coverage provision states that "charges made by a Physician or a Psychologist for professional services" are "Covered Expenses to the extent that the services or

---

[10] *Wildbur*, 974 F.2d at 638.

[11] *Id.*

[12] *See e.g., Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 228 (5th Cir. 2004); *Lain v. UNUM Life Ins. Co. of Am.*, 279 F.3d 337, 344-45 (5th Cir. 2002).

[13] *Chacko v. Sabre, Inc.*, 473 F.3d 604, 612 (5th Cir. 2006) (quoting *Keszenheimer v. Reliance Standard Life Ins. Co.*, 402 F.3d 504, 507 (5th Cir. 2005)).

supplies provided are recommended by a Physician, and are Medically Necessary for the care and treatment of an Injury or Sickness . . . ." The Summary Plan Description also contains a number of exclusions, including an exclusion for:

> nonmedical counseling or ancillary services, including but not limited to custodial services, education, training, vocational rehabilitation, behavioral training, biofeedback, neurofeedback, hypnosis, sleep therapy, employment counseling, back school, return to work services, work hardening programs, driving safety and services, training, educational therapy or other nonmedical ancillary services for learning disabilities, developmental delays, autism or mental retardation.

White argues that this exclusion encompasses only *nonmedical* neurofeedback and that consequently neurofeedback of the medical variety remains a covered expense under the Summary Plan Description. A contrary reading, White argues, would impermissibly render the word "nonmedical" superfluous. White further asserts that whether a particular service is medical depends on the underlying application or purpose for which it is prescribed; specifically, "medical treatment" means treatment that is "medically necessary" to treat a recognized illness. Accordingly, White contends that the exclusion is not applicable in her case because the neurofeedback services for which she requests coverage are medically necessary to treat her son's illness.

We agree with the district court that White's interpretation of the exclusion is inconsistent with the plain reading of its terms. The provision categorically defines nonmedical services, and neurofeedback is merely listed as one specific example. Accordingly, the word "nonmedical" is not superfluous as it describes the general category of services encompassed by the exclusion. In sum, the exclusion applies to *all* neurofeedback, which is always considered to be a nonmedical service under the Plan, irrespective of the purpose for which it is prescribed.

## IV

Despite the plain language of the Summary Plan Description, White insists that her interpretation is correct when considered in light of additional publications related to the Plan. Specifically, White points to CIGNA's Coverage Position, which was provided as part of the administrative record relied on to deny coverage. The Coverage Position explains that neurofeedback, which is classified as a form of biofeedback, may be covered in certain circumstances under some CIGNA plans. It further acknowledges that "biofeedback has been used to treat various medical conditions," including constipation, and that "CIGNA HealthCare covers biofeedback as medically necessary" for those conditions. White concludes that since her situation fits squarely within this statement, her claim is covered under the Plan.

Although White is correct that the Coverage Position states that biofeedback is covered when considered medically necessary, the document also prefaces this statement by noting that it is applicable only *if* coverage is available for biofeedback in the first place. The designation of biofeedback as medically necessary does not create coverage for biofeedback in plans in which it is specifically excluded. We also note that, read as a whole, the Coverage Position supports St. Luke's interpretation of the Summary Plan Description rather than White's. The Coverage Position states:

> Biofeedback and biofeedback devices are specifically excluded under many CIGNA HealthCare benefit plans. In addition, biofeedback and biofeedback devices are considered behavioral training and education/training in nature and services that are behavioral training or education/training in nature are explicitly excluded under most benefit plans.

It is notable that this provision makes no distinction between medical or nonmedical forms of biofeedback. Rather, the provision is most naturally read

to mean that all such services are usually excluded and nonmedical in nature, which is consistent with St. Luke's reading of the Summary Plan Description.

Finally, White argues that the Summary Plan Description should be interpreted in her favor because more particularized standards apply where, as here, the administrator bases its denial of benefits on the Summary Plan Description rather than the Plan itself. White is correct that ERISA guidelines require that Summary Plan Descriptions be "written in a manner calculated to be understood by the average plan participant" and that any ambiguities therein must be resolved in favor of the beneficiary.[14] However, as we explained, the relevant exclusion is not ambiguous. The mere fact that the benefit denial was based on clear language in the Summary Plan Description rather than the Plan itself does not allow White to create ambiguities where they do not exist.[15]

In any event, no abuse of discretion has occurred. As noted, in this circuit we traditionally apply a two-step analysis in reviewing a denial of benefits under an ERISA plan.[16] Even if the beneficiary demonstrates that the administrator's interpretation of the plan was legally erroneous, we still must determine that the administrator abused its discretion before its decision may be invalidated.[17] St. Luke's conducted a thorough review of White's claim and its ultimate denial of benefits was at a minimum based on a reasonable interpretation of the Summary Plan Description as well as the plan. Accordingly, St. Luke's did not abuse its discretion and its decision may not be disturbed.

---

[14] *Rhorer v. Raytheon Eng'rs & Constructors, Inc.*, 181 F.3d 634, 640-41 (5th Cir. 1999) (citing *Hansen v. Cont'l Ins. Co.*, 940 F.2d 971, 980 (5th Cir. 1991)).

[15] *See Wise v. El Paso Natural Gas Co.*, 986 F.2d 929, 939-40 (5th Cir. 1993).

[16] *See Wildbur*, 974 F.2d at 637.

[17] *Id.*

\*     \*     \*

Accordingly, we AFFIRM the district court's grant of summary judgment.