# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 29, 2010

Lyle W. Cayce
Clerk

No. 10-10394
Summary Calendar

BRUCE LEIPZIG, M.D.,

　　　　　　　　　　　　　Plaintiff-Appellant
　　　　　　　　　　　　　Cross-Appellee,

versus

PRINCIPAL LIFE INSURANCE COMPANY,

　　　　　　　　　　　　　Defendant-Appellee
　　　　　　　　　　　　　Cross-Appellant,

Appeals from the United States District Court
for the Northern District of Texas
No. 6:09-CV-36

Before DAVIS, SMITH, and SOUTHWICK, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-10394

Bruce Leipzig appeals a summary judgment to Principal Life Insurance Co. ("Principal"), alleging that Principal denied his disability insurance claim in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"). Because Leipzig was physically capable of working full-time, and his practice was limited to two days a week only because of market conditions in his city of residence, his post-disability earnings were not "solely and directly" caused by his medical condition, so he was not entitled to disability benefits under his insurance plan. Accordingly, we affirm on the ERISA claim. We remand, however, for the district court to explain its decision to deny attorney's fees.

I.

Leipzig is a 62-year old surgical otolaryngologist, also known as an "ear, nose and throat" specialist, or ENT, who maintains a medical practice in the city of Brownwood, Texas, which has a population of about 20,000. Because of Brownwood's size and the presence of two other surgical ENT's, patient demand for a non-surgical ENT is limited.

In 1993, Leipzig purchased a disability insurance policy ("the Plan") from Principal, which both administers and pays claims on the policy. Principal retained full discretion to interpret the Plan. Under the Plan, after the first two years in which benefits are payable, a policyholder would receive benefits only if he suffers from a disability, which the Plan defines as follows:

> A Member will be considered Disabled if, *solely and directly* because of sickness, injury, or pregnancy . . . [a]fter completing the Elimination Period and the Own Occupation Period, one of the following applies:

> (a) The Member cannot perform the majority of the Substantial and Material Duties of any Gainful Occupation for which he or she is or may reasonably become qualified based on education, training, or experience.

2

No. 10-10394

(b) The Member is performing the Substantial and Material Du-
ties of his or her Own Occupation or any occupation on a Modified
Basis and is unable to earn more than 66 ⅔% of his or her Indexed
Predisability Earnings.

(Emphasis added.) The Plan defines the term "Substantial and Material Duties"
to mean "[t]he essential tasks generally required by employers . . . in a particular
occupation that cannot be modified or omitted." The Plan defines "Own Occupa-
tion" to mean "[t]he occupation the Member is routinely performing . . . as per-
formed in the national economy." And finally, "Modified Basis" means "working
to his or her full medical and vocational capacity on a part-time basis."

In 2005, Leipzig was diagnosed with diplopia (double vision) and extropia
(crossed eyes). By April 2006, he had ceased performing surgery and sold his
practice. Principal approved Leipzig's disability claim effective June 15, 2006,
and began paying him monthly benefits.

In February 2007, Leipzig's counsel notified Principal that Leipzig had un-
dergone eye surgery and would resume a non-surgical ENT office practice in
Brownwood. Although Leipzig was physically capable of working a full schedule,
he worked no more than two days per week. Principal continued to pay reduced
benefits, reflecting the percentage reduction in his income relative to his pre-dis-
ability earnings.

In September 2007, Dr. David Weakley submitted a report to another in-
surer in which he stated that Leipzig "is seeing patients in his office, so obvi-
ously he is not disabled performing [sic] all duties as a medical doctor." Leipzig's
counsel provided the report to Principal in May 2008, and shortly thereafter
Principal informed Leipzig's counsel that it would no longer pay benefits after
June 14, 2008.

Principal conducted a telephone interview the following month, in which
Leipzig acknowledged that he was able to perform all his job functions other

than surgery, that he was working two full days a week, seeing ten to fifteen patients every four hours, and that he was not working full-time because he could see all his patients in two days. Principal then informed Leipzig's counsel by letter that Leipzig did not meet the definition of "totally disabled," because he was capable of working full-time, and his income would be 100% of his pre-disability earnings if he did.

In January 2009, Leipzig appealed Principal's denial and submitted a letter from Mark Brown, an otolaryngologist, opining that Leipzig was "acting in maximal capacity as a non-operative Otolaryngologist in Brownwood, Texas." Principal affirmed its denial by letter, in which it stated that Leipzig was "capable of seeing patients on a full time basis with the capacity to earn at least 66 ⅔% of his Indexed Predisability Earnings . . . [and] [t]he fact that there are not enough patients in his community does not constitute an ongoing disability."

Leipzig sued Principal, alleging that the denial violated ERISA, 29 U.S.C. § 1132(a)(1)(B) (2006). Principal counterclaimed for attorney's fees. The district court granted summary judgment for Principal on the ERISA claim and summarily denied fees. Leipzig appeals on the ERISA claim, and Principal appeals the denial of fees.

## II.

We review a summary judgment in an ERISA case *de novo*. *Schexnayder v. Hartford Life & Accident Ins. Co.*, 600 F.3d 465, 468 (5th Cir. 2010). We uphold a summary judgment "when the pleadings and evidence demonstrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." *Condrey v. SunTrust Bank*, 429 F.3d 556, 562 (5th Cir. 2005).

We review a plan administrator's denial of benefits *de novo* unless the plan provides to the contrary. *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2348 (2008). Where, as here, the plan gives the administrator discretionary authority

No. 10-10394

to determine eligibility for benefits, we apply an abuse-of-discretion standard to the denial. *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 (5th Cir. 2009).

If the administrator's determination is legally correct, our review ends, and there is no abuse of discretion. *Stone v. UNOCAL Termination Allowance Plan*, 570 F.3d 252, 257 (5th Cir. 2009). We consider three factors in deciding whether the administrator's interpretation of the plan is legally correct: "1) whether the administrator has given the plan a uniform construction, 2) whether the interpretation is consistent with a fair reading of the plan, and 3) any unanticipated costs resulting from different interpretations of the plan." *Id.* at 258 (quoting *Crowell v. Shell Oil Co.*, 541 F.3d 295, 312 (5th Cir. 2008)).

A.

The first factor is whether the administrator has given the plan a uniform construction across claims, or whether instead its treatment of the present claim is inconsistent with its treatment of previous ones. *Id.* A district court may examine evidence outside the administrative record for the limited purpose of determining how an administrator has interpreted the plan in other instances.[1]

Leipzig claims that a Principal employee, Michael Wallace, admitted that Principal had never previously denied benefits without considering the claimant's current or past residence, market conditions or patient populations. Because this, if true, might suggest that Principal did not construe the plan uniformly, the district court erred in refusing to consider this evidence for the lim-

---

[1] *Gooden v. Provident Life & Accident Ins. Co.*, 250 F.3d 329, 333 (5th Cir. 2001); *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999) (en banc), *abrogated in part on other grounds by Metro. Life*.

No. 10-10394

ited purpose of how Principal has interpreted the Plan in previous cases.[2]

Nevertheless, Leipzig's characterization of what Wallace said is highly misleading and does not suggest Principal inconsistently interpreted the Plan. Wallace answered affirmatively when Leipzig's counsel asked whether this was the first time Principal had denied a claim on the ground that it does not take residence or market conditions into account. That answer, unlike Leipzig's characterization of it, does not imply Principal previously took those factors into account in its definition of a disability; it could merely mean that Principal has never previously considered a comparable claim.

Indeed, Principal has received only two other claims under the Plan, and neither involved this issue. Moreover, Wallace stated that Principal's policy has always been to "look at [claimants'] ability to work, not their ability to find employment given economic conditions," which directly contradicts Leipzig's claim that this is a change of policy. We therefore agree with the district court that there is no evidence of inconsistency in Principal's interpretation of the Plan.[3]

B.

The second factor, whether the administrator's interpretation of the plan is consistent with a fair reading of it, is the most important. *Stone*, 570 F.3d at 258. We interpret the terms of a benefit plan in their "ordinary and popular sense as would a person of average intelligence and experience." *Id.* at 260 (internal quotation marks and citation omitted).

For a claimant to qualify as "Disabled" under prong (b) of the Plan's defi-

---

[2] The district court properly refused to consider evidence outside the administrative record for other purposes. *Vega*, 188 F.3d at 299.

[3] Because there is no evidence of different interpretations of the Plan, there cannot be "any unanticipated costs resulting from different interpretations" under the third factor of the legal-correctness test. *See Stone*, 50 F.3d at 258.

nition, three conditions must be met: (1) a claimant must "perform[] the Substantial and Material Duties of his . . . Own Occupation or any occupation . . . on a Modified Basis;" (2) he must be "unable to earn more than 66 ⅔% of his . . . Indexed Predisability Earnings;" and (3) conditions (1) and (2) must occur "solely and directly because of [the claimant's] sickness, injury or pregnancy." Even assuming Leipzig satisfies the first two conditions, he fails the third: Because his inability to earn more than 66 ⅔% of his pre-disability earnings did not occur "solely and directly because of" his medical condition, he does not qualify as "Disabled," and Principal's interpretation is a fair reading of the Plan.[4]

The words "solely and directly" imply that a claimant's "sickness, injury or pregnancy" must be the sole cause of his inability to earn more than 66 ⅔% of his pre-disability earnings. Principal does not contest that Leipzig does not have enough patients to work full time and therefore cannot earn more than 66⅔% of his pre-disability income in Brownwood. Conversely, Leipzig does not deny that he is physically capable of working five full days a week as a non-surgical ENT. Moreover, he did not gainsay, in the district court, that, were he to work full-time, he would be able to earn more than 66⅔% of his pre-disability income.[5]

---

[4] Leipzig argues that Principal based its denial only on the fact that he was not totally disabled. That is not a fair characterization of Principal's denial letter, which stated that Leipzig was "capable of seeing patients on a full time basis with the capacity to earn at least 66 ⅔% of his Indexed Predisability Earnings . . . . The fact that there are not enough patients in his community does not constitute an ongoing disability." Although the letter did not explicitly rely on the "solely and directly" language in the Plan, it did explain with sufficient clarity that the reason for the denial was that Leipzig was physically able to work full-time as an ENT even though he did not have enough patients to maintain a full-time schedule. That is precisely the ground on which we affirm.

[5] Leipzig now claims that even working five days a week, he would not make 66⅔% of his pre-disability income. Because he did not make that argument in the district court, we cannot consider it. *See, e.g., Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, 189 (5th Cir. 2007) ("As the issue has not been clearly raised in front of the district court, it cannot be considered on appeal."); *FDIC v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994) ("[I]f a litigant desires
(continued...)

No. 10-10394

The issue is whether Leipzig's medical condition can be considered the sole cause of his reduced income, or whether, instead, his inability to obtain full-time employment on account of local market conditions is a contributing factor. The plain meaning of the Plan language implies the latter. But for his inability to find full-time employment as a non-surgical ENT in Brownwood, Leipzig is capable of working full time and earning more than 66⅔% of his pre-disability income. His inability to do that is therefore not "solely and directly" caused by his medical condition.

Leipzig urges that interpreting the words "solely and directly" to mean that a claimant's medical condition must be the sole cause of his reduced income renders prong (b) of the definition of "Disabled" impossible to satisfy; it does not. Of course, the words "solely and directly" are not to be interpreted in the philosophical sense that any event, on some level of generality, can be said to have multiple contributing causes. Principal does not claim the policy terms are an exercise in the theoretically possible, but only that the Plan does not provide a form of employment insurance to those who are physically capable of working full-time but are able to find only part-time work. We agree.

That interpretation of the Plan is supported by our previous holdings in a similar context. In determining whether a claimant was capable of performing "any occupation" under a total-disability provision of an insurance plan, we held that, unless the plan language suggests otherwise, a plan administrator is not required "to identify or ensure the availability of other suitable employment."[6]

---

[5] (...continued)
to preserve an argument for appeal, the litigant must press and not merely intimate the argument during the proceedings before the district court. If an argument is not raised to such a degree that the district court has an opportunity to rule on it, we will not address it on appeal.").

[6] *Holland*, 576 F.3d at 251; *see also Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1309 (5th Cir. 1994) ("Texaco's disability benefits plan is not a form of employment insurance; it was not
(continued...)

Leipzig argues that *Holland* and *Duhon* are distinguishable because they are "any occupation" cases and did not involve a question of whether relocation to another city is necessary to maintain a certain level of income.[7] But the general issue in those cases is the same: whether an administrator must examine the specific employment opportunities available to a claimant, or whether instead it is sufficient to look at the general income-earning potential of a person with a particular set of skills. *Holland* and *Duhon* imply the latter is true unless the Plan language suggests otherwise. *See Holland*, 576 F.3d at 251; *Duhon*, 15 F.3d at 1309. If anything, the Plan language stating that a loss of income must be *solely* because of the claimant's medical condition is even more plain than was the meaning of "any occupation" in *Holland* or *Duhon*.

Leipzig's claim that it would be burdensome to relocate to find full-time employment as an ENT is thus beside the point. However difficult that may be, Principal has no duty to inquire into the particular employment opportunities available in the local labor market, but only into Leipzig's fitness to work in a

---

[6] (...continued)
necessary under this plan that the administrator insure the availability of an alternative job for Duhon before terminating his benefits." (internal quotation marks omitted)).

[7] Leipzig's position is somewhat self-contradictory. Despite arguing that *Holland* and *Duhon* are distinguishable because they are "any occupation" cases, Leipzig cites, in support of his interpretation, an "any occupation" case, *Caldwell v. Life Insurance Co. of North America*, 287 F.3d 1276 (10th Cir. 2002). There, the court noted, in passing, that determining whether a claimant is capable of performing "any occupation" requires an analysis of the labor market in the claimant's geographic region. *Id.* at 1289. A casual comment from another circuit about a policy provision in a different insurance contract is scant support for a position, but even if *Caldwell* is on point, it is contradicted by our own circuit precedent.

In a letter submitted pursuant to Federal Rule of Appellate Procedure 28(j), Leipzig points to two "any occupation" cases, *Scheuermann v. Unum Life Insurance Co. of America*, No. 08-51106, 2010 U.S. App. LEXIS 13716 (5th Cir. July 6, 2010) (per curiam) (unpublished), and *Gothard v. Metropolitan Life Insurance Co.*, 491 F.3d 246 (5th Cir. 2007). In both, the plan administrator examined whether jobs were available in the local economy that the claim could perform. *Scheuermann*, 2010 U.S. App. LEXIS 13716, at *3; *Gothard*, 491 F.3d at 250. But whether the administrator was required to inquire into opportunities available in the local economy was not at issue in either case, so they are inapposite.

particular occupation. Local market conditions are no more within Principal's predictive capacity than they are within a claimant's control. Indeed, it is not unusual for disability insurance plans to base their determinations solely on the claimant's health and not on local job availability. *Jestings v. New England Tel. & Tel. Co.*, 757 F.2d 8, 10 (1st Cir. 1985) (Breyer, J.). The federal Social Security program is a prominent example. *Id.*

Contrary to Leipzig's claim, the Plan's definitions of "Substantial and Material Duties," "Own Occupation," and "Modified Basis" are consistent with Principal's interpretation of the Plan. "Substantial and Material Duties" refers to those tasks "generally required by employers," and one's "Own Occupation" is "[t]he occupation the Member is routinely performing . . . as performed in the national economy." Thus, whether a claimant is performing the "Substantial and Material Duties of his . . . Own Occupation" refers to whether he is performing the tasks generally required by employers in the occupation he is routinely performing, as performed in the national economy. These definitions require an insurer to determine whether a claimant is performing the sorts of tasks an occupation generally requires, and the definitions are inconsistent with the notion that the determination turns on local economic factors.

As for "Modified Basis," the term is defined as performing an occupation up to one's "full medical and vocational capacity" on a part-time basis. Leipzig obviously did not perform any occupation to his full *medical* capacity, because it is undisputed he physically could have worked full time but did not. In addition, working to one's full *vocational* capacity is best read to mean working to the fullest extent permitted by one's vocational abilities, rather than the fullest extent permitted by one's local labor market. Principal's interpretation of the Plan is thus fully consistent with these definitions.

Because Principal's interpretation of the Plan is both a uniform construction and a fair reading, it is legally correct. Principal has therefore not abused

No. 10-10394

its discretion, and it is unnecessary for us to address Leipzig's argument that Principal acted arbitrarily or capriciously.  *Stone*, 570 F.3d at 257.[8]

## III.

The final issue is whether the district court abused its discretion in summarily denying attorneys' fees to Principal.  ERISA permits "the court in its discretion [to] allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1).  We review the denial of attorneys' fees in an ERISA case for abuse of discretion.  *Todd v. AIG Life Ins. Co.*, 47 F.3d 1448, 1458 (5th Cir. 1994).

A district court must explain its decision to deny fees, and if, as here, it fails to give any explanation, we must remand.[9]  The judgment is therefore AFFIRMED except as to the denial of fees.  We VACATE that portion of the judgment and REMAND for an explanation regarding fees.  This is a limited remand; we retain jurisdiction.

---

[8] We also reject Leipzig's attempt to use a breach-of-fiduciary-duty claim to skirt the standard of review required for a § 1132(a)(1)(B) denial-of-benefits claim.  Because § 1132-(a)(1)(B) provides an adequate remedy for a denial-of-benefits claim, a plaintiff may not bring a private action for breach of fiduciary duty to challenge a denial of benefits.  *Estate of Bratton v. Nat'l Union Fire Ins. Co.*, 215 F.3d 516, 526 (5th Cir. 2000).

[9] *E.g., CenterPoint Energy Houston Elec. LLC v. Harris Cnty. Toll Rd. Auth.*, 436 F.3d 541, 550-51 (5th Cir. 2006); *Schwarz v. Folloder*, 767 F.2d 125, 133 (5th Cir. 1985).