United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 27, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 06-50386
c/w 06-50564

SUSAN GOTHARD,

Plaintiff-Appellee,

versus

METROPOLITAN LIFE INSURANCE CO.;
BUSINESS MEN'S ASSURANCE COMPANY OF AMERICA,

Defendants-Appellants.

Appeals from the United States District Court
For the Western District of Texas

Before HIGGINBOTHAM, DAVIS, and WIENER, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Susan Gothard sued her disability-plan fiduciary, MetLife, for terminating her long-term disability payments.  The district court granted Gothard's motion for summary judgment, ruling that MetLife abused its discretion because its decision was not supported by substantial evidence.  We must reverse because we conclude that it was.

I

A

Susan Gothard worked as a legal secretary until she injured her back on Feburary 6, 2001.  She had surgery for a herniated

disc, but her recovery was cut short by a car accident, which made her injury permanent. On May 4, 2001 she applied for long-term disability benefits, was approved, and collected benefits until MetLife terminated them in July 2003, finding that she could perform sedentary work. Gothard filed this suit in federal district court, and on cross-motions for summary judgment, the district court held that MetLife's decision to terminate her benefits was arbitrary and capricious.

B

After her surgery, Gothard was under the care of Dr. Hunley Chapman. On November 26, 2002, Dr. Chapman examined Gothard and found that she would never return to work. He noted that she reported pain as 8 out of 10, that it came on suddenly, that it was better while she was lying down or had her legs elevated, and that it was worse while sitting in a soft chair, walking for more than 10 minutes, or standing for more than five minutes. He noted a 50% limitation in her lumbar range of motion. Dr. Chapman also completed an assessment for MetLife. He reported that Gothard could not lift over 10 pounds, but that she could do any of the following activities for up to 33% of the time: bend, sit, drive, push/pull, stand, walk, climb, craw, and squat/stoop. In the "other limitation" section he noted that Gothard should not do any long-term sitting or standing.

Upon reviewing this medical report, the MetLife case manager notified Gothard that her file was being refered to a Nurse

2

Consultant for review because, in the case manager's opinion, Gothard should have been able to return to work as a legal secretary. The Nurse consultant agreed, noting that even though Gothard had been awarded SSI benefits, her medical file did not support her claim that she couldn't perform sedentary work. Indeed, Dr. Chapman had noted that Gothard might be a candidate for evaluation by the Texas Rehabilitation Commission.

MetLife's decision to terminate Gothard's benefits was soon put on hold. In late January of 2003, Gothard received an epidural steroid injection, and MetLife decided to wait for the updated medical records. Those records indicated that Gothard had progressed and responded to treatment. Dr. Chapman removed the limitation on lifting up to 10 pounds, stating that Gothard could occasionally, up to 33% of the time, carry up to 10 pounds. He also reduced her medication, from six prescriptions to two. He reiterated his 33% restriction on bending and sitting and standing. In the same report, Dr. Chapman noted that Gothard could "never" return to work. A few months later, in April of 2003, Gothard reported that her pain was only of moderate discomfort, that it came on gradually, and that it was better when she was sitting.

The plan's definition of disability is time dependant, and May 8, 2003 was an important transition date under the plan. For the first 24 months of benefits, disability is defined as when "the insured cannot perform the essential duties of his or her *regular*

*occupation* on a full-time basis." After 24 months, disability is defined as when "the insured cannot perform the essential duties of *any occupation* for which he or she is reasonably fitted by training, education, or experience on a full-time basis."

After May 8, 2003, MetLife conducted a labor market survey to determine whether *any* jobs were available for Gothard. The survey classified Gothard as a "secretary," using the Department of Labor's Dictionary of Occupational Titles. The survey reported that

> all of the employers contacted regarding possible sedentary jobs indicated sedentary work requirements with no greater lifting than 10 lbs. And primarily sitting, although this type of job would allow for change in position. All of the positions would require occasional bending (accommodations could be made).

MetLife concluded from this survey that Gothard could work several jobs in the Waco area based on her training, education, and experience. MetLife terminated Gothard's LTD benefits in a letter dated July 21, 2003.

Gothard filed an administrative appeal. Her record was reviewed by Dr. Amy Hopkins, who found that Gothard's medical file contained no objective support for the proposition that Gothard was unable to perform sedentary work. Dr. Hopkins reported that

> Repeated exams by Dr. Chapman were notable only for LS junction tenderness and reduced LS [range of motion]. There was not objective evidence of any radiculopathy, neuropathy, myopathy, or plexopathy. Dr. Chapman also noted on both 11/26/02 and 1/17/03 that [Gothard] had a sedentary work capacity. Since [Gothard's] own

4

occupation was sedentary, there was no objective support in this file for [Gothard's] inability to perform the material duties of her own occupation.

Indeed, according to Dr. Hopkins's review of the medical records, there was nothing preventing Gothard from returning to her *own occupation*. That is, Dr. Hopkins opined that nothing in the medical record supported *any restrictions* on sitting, walking, standing, or bending. Based on this opinion, on March 22, 2004, MetLife upheld its own decision to terminate Gothard's benefits. Gothard then filed this lawsuit in federal district court, and the district court granted Gothard's cross motion for summary judgment.

II

A

MetLife is the plan fiduciary, vested with the discretionary authority to determine disability claims under the plan. As such, a district court may reverse MetLife's decision regarding benefits only for an abuse of discretion that yields an arbitrary and capricious decision.[1] A decision is arbitrary only if "made without a rational connection between the known facts and the decision or between the found facts and the evidence."[2] Our standard of review is informed by MetLife's conflict of interest, for it is both the insurer and administrator of the disability

---

[1]*Meditrust Financial Services Corp. v. Sterling Chemicals, Inc.*, 168 F.3d 211, 214–15 (5th Cir. 1999); *Vega v. National Life Ins. Services*, 188 F.3d 287, 295 (5th Cir. 1999) (*en banc*).

[2]*Bellaire*, 97 F.3d at 828-29.

plan.[3]  We therefore apply a "sliding scale standard" and accord MetLife's decision less than full deference,[4] reviewing the district court's grant of summary judgment *de novo*.[5]

B

MetLife urges this court to reverse, arguing that it did not abuse its discretion in terminating benefits because there is substantial evidence that Gothard could do sedentary work.  Gothard responds that, according to her treating doctor's orders, she can only sit for up to 33% of the work day, too little time for full-time sedentary work.  Gothard also notes that her treating doctor opined that she could "never" return to work.

There is substantial evidence in support of Metlife's conclusion.  Its labor market survey adopted the 33% sitting limitation that was proposed by Gothard's treating physician.  The survey found that even though sedentary jobs primarily involve sitting, such sedentary jobs "would allow for change in position" and that though all of the positions would require occasional bending, "accommodations could be made."

Even if this were not the case, the report of MetLife's consulting physician still provides substantial evidence in support of MetLife's decision.  The Supreme Court has held that "plan

---

[3]*Id.* at 295–97.

[4]*Id.*

[5]*Baker v. Metropolitan Life Ins.*, 364 F.3d 624, 628 (5th Cir. 2004).

6

administrators are not obliged to accord special deference to the opinions of treating physicians."[6]  Accordingly, this court has held that an administrator does not abuse its discretion when it relies on the medical opinion of a consulting physician whose opinion conflicts with the claimant's treating physician.[7]  This is so even if the consulting physician only reviews medical records and never physically examines the claimant, taxing to credibility though it may be.[8]

Dr. Hopkins reviewed the same medical records as the treating physician and reached a different conclusion, opining that the medical records did not support any restrictions that would prevent Gothard from working as secretary.  This conclusion, reached from a desk in Connecticut, is in plain conflict with the treating physician's note that Gothard could "never" return to work.  Yet plan fiduciaries are allowed to adopt one of two competing medical views, a rule which resolves this appeal in favor of MetLife.

We do not hold that a plan fiduciary has no obligation to consider the basis of the expert opinion on which they are relying at summary judgment, or that a fiduciary may rely on an opinion that is in plain conflict with medical records.  That is not this

---

[6]*Black & Decker Disability Plan v. Nord*, 538 U.S. at 831.

[7]*Gooden v. Provident Life*, 250 F.3d 329, 335 n.9 (5th Cir. 2001); *MediTrust v. Fin. Servs. Corp. v. Sterling Chems*, 168 F.3d 211, 213 (5th Cir. 1999); *Sweatman v. Commercial Union Ins.*, 39 F.3d 594, 597 (5th Cir. 1994).

[8]*Id.*

7

case.  Dr. Hopkins opinion can be arguably supported by the medical record, two assessments by Dr. Chapman, and the office visit notes. Further, the labor market survey conducted by MetLife indicates that sedentary jobs, requiring less than 33% sitting without change of position, are available in the Waco labor market.  We cannot say that this finding is sustained by our experience or that it does not conflict with our own judgment of what is required of a legal secretary, yet the relevant question, by the terms of the plan, is whether Gothard is "suited for *any occupation* for which he or she is reasonably fitted by training, education, or experience on a full-time basis."   MetLife's decision may not be correct, but we cannot say that it was arbitrary.[9]   The judgment of the district court is REVERSED and REMANDED with instructions to enter judgment in favor of MetLife.

---

[9]We are not persuaded by MetLife's suggestion that the district court gave undo weight to a finding of disability under the federal social security scheme.