# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 6, 2010

No. 08-51106

Lyle W. Cayce
Clerk

ROBERT SCHEUERMANN,

Plaintiff-Appellant

v.

UNUM LIFE INSURANCE COMPANY OF AMERICA,

Defendant-Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:07-CV-00348

Before REAVLEY, SMITH, and DENNIS, Circuit Judges.

PER CURIAM:[*]

The plaintiff-appellant, Robert Scheuermann (Scheuermann) seeks long-term disability benefits under a Group Disability Policy (Policy) his former employer maintained with the defendant-appellee, Unum Life Insurance Company of America (Unum). Unum denied his claim, and, after a bench trial, the district court held that Unum had not abused its discretion. We VACATE the district court's judgment and REMAND.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 08-51106

## I.  PROCEDURAL AND FACTUAL BACKGROUND

Scheuermann worked as a carpenter for a builder of log homes from 1992 to September 3, 2003, the day before his first back surgery.  After a work-related back injury in the summer of 2003, his orthopedic surgeon, Dr. Tipton, diagnosed Scheuermann as suffering from sciatica and performed three back surgeries in a little over six months in 2003 and 2004, followed by another surgery by Dr. Foreman, a rehabilitation specialist, in November 2004.  Dr. Malone performed a fifth surgery, in June 2005, and implanted a neurostimulator in Scheuermann's back in November 2006 in an attempt to control the pain.  Despite the six surgeries, Scheuermann claims he continues to have severe pain.

Prior to the fourth operation, in September 2004, Dr. Tipton stated in an attending physician's statement that Scheuermann was not released to work, was unable to lift an object greater than 30 pounds, could not frequently carry objects greater than 15 pounds, was unable to sit or stand for longer than one hour without rests and could not bend repeatedly.  Dr. Tipton also noted in a subsequent report that Scheuermann was completely disabled.  In his July 2005 attending physician statement, Dr. Malone opined that Scheuermann was unable to sit or stand continually for more than one hour, could not lift more than five pounds nor push, pull, stoop or climb.

In a review of Scheuermann's claim for long-term disability–defined under the Policy as a "sickness or injury" rendering the claimant "unable to perform the duties of any gainful occupation for which [he is] reasonably fitted by education, training or experience"–Dr. Sentef, an Unum physician, first reviewed Scheuermann's file in April 2006 and opined that he considered Dr. Malone's restrictions and limitations "overly restrictive." In July 2006, Dr. Tsourmas, on behalf of Unum, performed an independent medical evaluation (IME) and determined that Scheuermann "should qualify after a rehabilitation of sorts in a light duty capacity, as defined by the Department of Labor." But Dr. Tsourmas

2

stated that before he would form a definitive opinion on Scheuermann's functionality he "would like to review the MRI [by Dr. Malone] of several months back" and requested "extension x-rays to assess instability in a multiply-operated back."  On the basis of the IME, Unum vocational consultant Waymire opined that Scheuermann was capable of performing certain sedentary jobs that existed in the Austin economy.

In August 2006, Unum advised Dr. Tsourmas that the MRI he requested was unavailable (although it is undisputed that Unum, at that time of the letter, had it in its files) and urged him to promptly assess Scheuermann's present functional level.  Although he had not received any new medical evidence or seen Scheuermann since the July IME, Dr. Tsourmas responded with an addendum to his original report, opining that "this patient at present is both employable and re-trainable.  His avocational activities and home activities suggest he's light duty employable per DOL standards."

On that basis, Unum informed Scheuermann in a September 15, 2006 letter that it was terminating his benefits because, based on "the objective medical evidence,"he was "both employable and re-trainable," and "no longer me[]t the contractual definition of disability" under the Policy.  Up to that point, Unum had paid Scheuermann short-term benefits for eleven weeks and long-term benefits for 33 months pursuant to the Policy.

On administrative appeal, Unum physician Dr. Pons was the first to review Scheuermann's record, including his April 2006 MRI.  He noted the following restrictions and limitations: "no excessive bending, standing or stooping, lifting is limited from 10-15 pounds. Sit or stand alternately during an 8 hour work day.  Sitting and standing, alternating between these positions hourly."  Dr. Pons further opined that "Dr. Tsourmas and Tipton suggest the most reasonable R[estrictions] and L[imitation]s while Dr. Malone's R[estrictions] and L[imitation]s appear overly restrictive."   Next, Unum

neurosurgeon Dr. Sternbergh reviewed the file and concluded that Dr. Malone's restrictions and limitations were "overly restrictive and d[id] not correlate with the available medical information," while the restrictions and limitations by Drs. Tipton and Tsourmas supported that he was capable of performing sedentary work. Dr. Sternbergh's suggested permanent limitations and restrictions included an "accommodation to change positions or activities as needed for comfort, with no requirement for repetitive bending or lifting[,]" with a lifting limitation of 15 to 20 pounds occasionally.

After the administrative review by Drs. Pons and Sternberg, Unum Senior Vocational Rehabilitation Consultant Shannon O'Kelley reviewed Scheuermann's record and concluded that Waymire's July 2006 vocational assessment of Scheuermann remained accurate.

In a January 31, 2007 letter, Unum informed Scheuermann that it was upholding its original denial of long-term benefits. The letter referenced the opinions of Drs. Tsourmas, Pons and Sternbergh and O'Kelley's vocational assessment and explained that "[w]ith the above medical and vocational analyses available and based on the totality of documentation in your files, we have no recourse but to find the original decision to deny Long Term Disability Benefits . . . to be contractually and factually supported. . . ."

Scheuermann initially filed suit against Unum in Texas state court, challenging its decision to terminate his benefits. Unum removed the case to the district court in May 2007. After a bench trial, the district court upheld Unum's denial of benefits.

## II. STANDARD OF REVIEW

"On appeal from a bench trial, we review the factual findings of the trial court for clear error. We review conclusions of law *de novo*, including the trial court's determination of its own standard of review of an ERISA administrator's determination of eligibility for benefits." *LeTourneau Lifelinke Orthotics &*

No. 08-51106

*Prosthetics, Inc. v. Wal-Mart Stores, Inc.*, 298 F.3d 348, 350-51 (5th Cir. 2002) (citing *Kona Tech. Crop. v. S. Pac. Transp. Co.*, 225 F.3d 595, 601 (5th Cir. 2000); *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 213 (5th Cir. 1999)). *See also Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 314 (5th Cir. 2007).

Where, as here, "the Plan undisputedly gives the Plan Administrator the discretionary authority to construe the Plan's terms and to render benefit decisions, we reverse the Plan Administrator's denial of benefits . . . only if it abused its discretion." *Holland v. International Paper Co. Retirement Plan*, 576 F.3d 240, 246 (5th Cir. 2009) (citing *Stone v. UNOCAL Termination Allowance Plan*, 570 F.3d 252, 257-58 (5th Cir. 2009)). *See also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Sanders v. Unum Life Ins. Co. of America*, 553 F.3d 922, 925 (5th Cir. 2008).[1] "Under the abuse of discretion standard, '[i]f the plan fiduciary's decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail." *Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 397-98 (5th Cir. 2007) (quoting *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004)). "'Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 398 (quoting *Ellis*, 394 F.3d at 273).

"We apply a two-step process when conducting this abuse of discretion review. First, we determine whether the Administrator['s] . . . determination was legally correct. If so, the inquiry ends and there is no abuse of discretion. Alternatively, if the court finds the administrator's interpretation was legally incorrect, the court must then determine whether the administrator's decision was an abuse of discretion." *Stone*, 570 F.3d at 257 (citing *Crowell v. Shell Oil Co.*, 541 F.3d 295, 312 (5th Cir. 2008)). However, where, as here, "[t]he parties

---

[1] The parties do not dispute that Unum had discretionary authority to construe the terms of the Policy and to determine eligibility for benefits under the Policy.

No. 08-51106

. . . have not conformed their arguments to our traditional two-step analysis . . . we bypass, without deciding, whether the Plan Administrator's denial was legally correct, reviewing only whether the Plan Administrator abused its discretion in denying the claim." *Holland*, 576 F.3d at 246 n.2.[2]

Additionally, where the claim administrator had a financial conflict of interest because it was responsible for both determining eligibility for benefits and for paying benefits, as is the case here, we take into account the conflict of interest—though, without changing the standard of review—as one factor in deciding whether the administrator abused its discretion under the second step of the analysis. *Metropolitan Life Insurance Co. v. Glenn*, 128 S. Ct. 2343, 2346 (2008); *Holland*, 576 F.3d at 247; *Stone*, 570 F.3d at 257.

## III.  DISCUSSION

Scheuermann argues that the district court clearly erred when it found that Unum's decision to terminate Scheuermann's long-term benefits was based on concrete evidence supporting the denial of his claim.  We agree.

In its initial denial of long-term benefits, Unum relied on the opinions of its own physician, Dr. Sentef, and independent medical examiner Dr. Tsourmas. Neither physician's report, however, provides the concrete evidence required. The district court concluded that "Sentef's report [wa]s concrete evidence . . . supporting Unum's decision to deny benefits, because Sentef determined the Malone restrictions and limitations were overly restrictive, based on his review of Scheuermann's medical records. . . ."  But nowhere in his report does Dr. Sentef state that Scheuermann was not disabled under the Policy.  Instead Dr. Sentef requested that Dr. Malone provide a clearer assessment of

---

[2] Here, the parties do not dispute the district court's determination that "Scheuermann's arguments implicate only Unum's factual determinations, not its Policy interpretation."

Scheuermann's functional capabilities.  Such a vague and incomplete medical opinion is an insufficient basis for Unum's denial of long-term benefits.

Further, Unum and the district court erroneously relied on Dr. Tsourmas' addendum to his original report as concrete evidence supporting the denial of benefits.  After his initial IME report did not give a definitive opinion on Scheuermann's functional capacities and requested additional records, Dr. Tsourmas, upon Unum's urgent request, sent the following addendum:

> Per letter 8/11/006 from Unum, I would offer this patient at present is both employable and re-trainable.  His avocational activities and home activities suggest he's light duty employable per DOL standards.

The district court held that "Unum did not abuse its discretion in relying on [Dr. Tsourmas' amended report]."  It explained that, "[a]lthough the Tsourmas-addendum conclusion differs from the conclusion in the original report . . . Tsourmas apparently changed his mind about Scheuermann's abilities between July 6, 2006, and September 8, 2006."  The district court further conjectured that Dr. "Tsourmas was presumably aware of Scheuermann's condition from the examination two months prior, and aware of the conclusion of the original report on which he added the addendum."  The district court then reconciled the fact that Dr. Tsourmas had not received any further information after his initial report to justify his significantly changed opinion two months later: "Although Tsourmas believed, at the time he wrote the addendum, that the information he requested was unavailable, it does not mean his addendum was inaccurate.  Upon learning such information was unavailable, Tsourmas did not repeat his request for such information or ask how he could obtain it; he instead responded to Unum's August 11, 2006 question by changing his earlier assessment. . . ."  Therefore, the district court reasoned, "[i]t was rational for Unum to rely on the Tsourmas addendum to deny benefits. . . ."

No. 08-51106

While a plan administrator need not defer to the opinion of a treating physician over that of a reviewing physician, who, based on the medical evidence in the record, reaches a different conclusion, *Gothard v. Metropolitan Life Ins. Co.*, 491 F.3d 246, 249 (5th Cir. 2007) (citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831 (2003)); *see also Corry*, 499 F.3d at 401-02 ("In this 'battle of experts' the administrator is vested with discretion to choose one side over the other."), the situation we face here is different.  Scheuermann's contention is that Unum abused its discretion "when it relied on the addendum from Dr. Tsourmas that was in plain conflict, not only with the opinion of [his] treating physicians but with Dr. Tsourmas' own, original report."  We agree.  Dr. Tsourmas' revised conclusion, in his addendum, that Scheuermann "is both employable and re-trainable" lacks a reasonable basis for departing from his earlier diagnosis, in his original report, based on the identical medical record, that Scheuermann had "a failed surgical spine" and that, with "a rehabilitation program of sorts," he may only qualify for light duty work.  Dr. Tsourmas' original report's prediction that Scheuermann would be "functional" *in the future* was premised on a "rehabilitation program" and "pain management," neither of which was initiated between the period of the original report and its addendum. Additionally, at the end of his original report, Dr. Tsourmas responded to Unum's question as to whether "there [were] any diagnostics that you feel are *necessary* before formulating an accurate opinion" (emphasis added): "Yes.  I would like to review the MRI of several months prior.  Also, this patient needs flexion, extension x-rays to assess instability in a multiply-operated back.  None of the recent studies accompany the patient today."[3]  However, Dr. Tsourmas

---

[3] Unum's internal notes confirm that Dr. Tsourmas' original report did not provide a definitive opinion on Scheuermann's functionality: "[T]he IME has responded with questions/requests rather than providing answers. *The IME did not provide immediate information on Mr. Scheuermann's present functional capacity . . . .*"  (emphasis added)

8

never reviewed the requested materials because Unum advised him that "the additional materials . . . [were] not available," while at the same time urging him to "[p]lease respond to our questions as to what the claimant's functional level is at the present." Only in response to Unum's urgent request did Dr. Tsourmas change his mind. Because Dr. Tsourmas' own original report concedes that the medical evidence did not support a conclusion that Scheuermann was functional, his addendum, based on the identical medical evidence as the original report, is "in plain conflict with the medical records."[4] *Gothard*, 491 F.3d at 250.

Neither do the reports by Drs. Pons and Sternbergh, relied on by Unum at the administrative review as additional evidence, provide concrete evidence supporting its denial of benefits. Dr. Pons, on two occasions in his report, misinterprets Scheuermann's April 19, 2006 MRI. As Unum conceded, he states that "there is a broad based central and left paramedian disc herniation which does not abut the descending left S1 nerve root," when in fact it does. Further, Dr. Pons' report references Dr. Tsourmas' opinion that Scheuermann "could be much improved and be much more functional" but doesn't state that Scheuermann is not disabled under the Policy at the present time. Dr. Sternbergh, in turn, is under the wrong impression that Scheuermann had only three back surgeries (when he in fact had six), and he repeats Dr. Pons' mistake that Scheuermann's "broad based central and left paramedian disc herniation . . . [did] not abut the descending left S1 nerve root" when in fact it does.

Against this background we cannot say that Unum's decision on Scheuermann's long-term disability benefits was "based on evidence, even if disputable, that clearly supports the basis for its denial." *Holland*, 576 F.3d at

---

[4] Unum does not dispute that Dr. Tsourmas' addendum is based on the identical medical record, and that the conclusions in his original report would not have justified its denial of Scheuermann's long-term disability benefits. Unum further does not dispute Scheuermann's contention that the MRI that it withheld from Dr. Tsourmas showed a deterioration of Scheuermann's medical condition.

246 (citation and quotation marks omitted). *See also Gothard*, 492 F.3d at 450 ("We do not hold that a plan fiduciary has no obligation to consider the basis of the expert opinion on which they are relying. . . ."). Accordingly, we conclude that Unum abused its discretion in denying long-term benefits, and that the district court clearly erred in holding that Unum's denial was supported by concrete evidence.

## IV.  CONCLUSION

For the above reasons, we VACATE the district court's judgment in favor of Unum and REMAND the case to the district court for proceedings consistent with this opinion.