# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-20646

United States Court of Appeals
Fifth Circuit

**FILED**

January 31, 2019

Lyle W. Cayce
Clerk

KAREN A. RITTINGER,

Plaintiff–Appellee Cross–Appellant,

v.

HEALTHY ALLIANCE LIFE INSURANCE COMPANY, doing business as
Anthem Blue Cross and Blue Shield; ANTHEM UM SERVICES,
INCORPORATED,

Defendants–Appellants Cross–Appellees.

Appeals from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, GRAVES, and WILLETT, Circuit Judges.

PER CURIAM:

This case involves a bariatric surgery gone wrong and the ensuing clash over insurance coverage. Given our highly deferential standard of review, we cannot say that Anthem, the plan administrator, abused its discretion in either the first or second internal appeal. Because we agree with Anthem, Rittinger's cross-appeal (to determine the exact dollar amount of damages she is owed) is moot.

I

Karen Rittinger was the beneficiary of an ERISA-covered plan. Healthy Alliance Life Insurance Company offered the plan and Anthem Blue Cross Blue Shield (Anthem) administered it.

No. 17-20646

In October 2014, Rittinger underwent bariatric surgery. Complications arose requiring follow-up surgery and intensive care. Anthem denied preauthorization for both the bariatric surgery and the follow-up surgery, writing, "We cannot approve coverage for weight loss surgery (bariatric surgery) or hospital care after this surgery. Bariatric or weight loss surgery is an exclusion in your health plan contract."

Pertinently, Paragraph 33 of the Health Certificate of Coverage (Certificate) deals with bariatric surgery:

> [The plan does not cover] bariatric surgery, regardless of the purpose it is proposed or performed. This includes but is not limited to Roux-en-Y (RNY), Laparoscopic gastric bypass surgery or other gastric bypass surgery . . . . Complications directly related to bariatric surgery that result in an Inpatient stay or an extended Inpatient stay for the bariatric surgery, as determined by Us, are not covered.

Crucially, there is an exception at the end of Paragraph 33: "This exclusion does not apply to conditions including but not limited to . . . excessive nausea/vomiting." Since none of Rittinger's preauthorization information mentioned "excessive nausea/vomiting," Anthem cited Paragraph 33's exclusion and denied coverage.

The next month, Rittinger's husband emailed Anthem. He explained that he had "Medical Power of Attorney . . . to speak on behalf of [his] wife[,] Karen Rittinger." He stated that he "would like to file an appeal for her hospitalizations which began on 10/15/2014." Anthem treated this as an official first-level appeal. After gathering more information from Rittinger and her surgeons and obtaining an independent peer review, Anthem again denied coverage.

In April 2015, Rittinger hired counsel and filed a second-level internal appeal. She submitted materials about her medical history and the surgery.

2

No. 17-20646

Emphasizing Paragraph 33's exception for bariatric surgery where there is "excessive nausea/vomiting," Rittinger provided records showing: (1) she suffered from Gastroesophageal Reflux Disease (GERD) and esophagitis, (2) GERD/esophagitis is linked to nausea and vomiting, and (3) she underwent surgery to address these problems.

Anthem convened a five-person "Grievance Advisory Panel" (GAP) to evaluate Rittinger's second-level appeal. The GAP quoted Paragraph 33, concluded it excluded Rittinger's bariatric surgery, and affirmed the denial of coverage.

Having exhausted her internal remedies, Rittinger sued. Both parties moved for summary judgment. Since neither side disputed that the plan properly delegated discretion to Anthem to administer the plan, the district court correctly reviewed the two internal appeals for abuse of discretion. It held that Anthem did not abuse its discretion when it treated Mr. Rittinger's email as a first-level appeal. But the district court held that Anthem *did* abuse its discretion in the second-level appeal. It believed Anthem's construction of the plan's terms directly contradicted their plain meaning. It also thought Rittinger's evidence linking GERD/esophagitis to nausea/vomiting deserved more weight.

II

The district court had jurisdiction over this case under ERISA, 29 U.S.C. §§ 1001 *et seq*. We have jurisdiction over Anthem's appeal under 28 U.S.C. § 1291. Rittinger also filed a cross-appeal, arguing we should state the exact dollar amount of damages she is owed. But because we hold that Anthem did not abuse its discretion in either internal appeal, her cross-appeal is moot.

3

No. 17-20646

We review a district court's grant of summary judgment in an ERISA case de novo.[1] Here, Anthem had "all the powers necessary or appropriate . . . to construe the Contract [and] to determine all questions arising under the Certificate." Rittinger never challenged the clause's enforceability in the district court. Because "[f]ailure to raise an argument before the district court waives that argument,"[2] Rittinger has forfeited this issue. Anthem's fiduciary discretion was valid.

Rittinger argues that our recent en banc decision in *Ariana M.*[3] requires us to review Anthem's denial de novo instead of for abuse of discretion. But *Ariana M.* only governs cases in which a plan does not validly delegate fiduciary discretion.[4] And even though Texas Insurance Code § 1701.062 bans insurers' use of delegation clauses in Texas, Missouri law governs this case. As Anthem observes (and Rittinger fails to contest), this case involves a plan sold in Missouri by a Missouri insurer to a Missouri employer. Moreover, the Certificate of Coverage specifically states that the "laws of the state in which the Group Contract was issued [Missouri] will apply." *Ariana M.*, therefore, does not control.

Where a plan administrator has discretion, as here, we review the administrator's denial of benefits deferentially for abuse of discretion.[5] We have clarified this standard, saying that a "plan administrator abuses its discretion where the decision is not based on evidence, even if disputable, that

---

[1] *Schexnayder v. Hartford Life & Accident Ins. Co.*, 600 F.3d 465, 468 (5th Cir. 2010).

[2] *Fruge v. Amerisure Mut. Ins. Co.*, 663 F.3d 743, 747 (5th Cir. 2011).

[3] *Ariana M. v. Humana Health Plan of Tex., Inc.*, 884 F.3d 246 (5th Cir. 2018) (en banc).

[4] *Id.* at 247 ("When an ERISA plan lawfully delegates discretionary authority to the plan administrator, a court reviewing the denial of a claim is limited to assessing whether the administrator abused that discretion.").

[5] *Schexnayder*, 600 F.3d at 468 (citing *Corry v. Liberty Life Assurance Co. of Bos.*, 499 F.3d 389, 397 (5th Cir. 2007)).

clearly supports the basis for its denial."[6] Yet "[i]f the plan fiduciary's decision is supported by substantial evidence and is not arbitrary or capricious, it must prevail."[7] "Substantial evidence is 'more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[8]

## III

## A

Rittinger argues that Anthem abused its discretion when it treated her husband's email as a formal first-level appeal. The plan prescribes "How To File a First Level Appeal or Grievance for Review." But nowhere does it supply an email address where appeals can be directed. Rittinger contends that, given its elaborate appeals procedures, Anthem had no wiggle room to interpret other inquiries as appeals.

Anthem argues that it had wide discretion in administering the plan. Moreover, treating this as an appeal did not prejudice Rittinger, nor does she argue that it did. Anthem says, "[n]o harm, no foul."

The district court disagreed with Anthem's interpretation of plan terms and procedures. It also rejected Anthem's "no harm, no foul" argument, reasoning that a customer whose plan entitles her to *two* internal appeals is harmed if she receives *one* adequate appeal. But the district court also understood Anthem's need to "respond quickly to a customer's request," and not "shut out customers who do not dot every 'i' and cross every 't' in a complex submission process." Plus, it is natural to read Mr. Rittinger's email—"I would like to file an appeal"—as a request to appeal.

---

[6] *Id.* (quoting *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 (5th Cir. 2009)).

[7] *Id.* (quoting *Ellis v. Liberty Life Assurance Co. of Bos.*, 394 F.3d 262, 273 (5th Cir. 2004)).

[8] *Ellis*, 394 F.3d at 273 (quoting *Deters v. Sec'y of Health, Educ. & Welfare*, 789 F.2d 1181, 1185 (5th 1986)).

No. 17-20646

We agree. Given the email's wording, it was reasonable to think Mr. Rittinger was appealing. Thus, Anthem did not abuse its discretion when it treated Mr. Rittinger's email as a first-level appeal.

B

Was the GAP's denial of coverage in the second-level appeal an abuse of discretion? Rittinger contends it was. She claims the GAP ignored her relevant evidence and failed to analyze Paragraph 33's "excessive nausea/vomiting" exception. Anthem responds that the administrative record contained more than a scintilla of evidence that Rittinger's surgery was for weight loss purposes and that she had no vomiting or nausea.

The district court rightly observed that assessing the second-level appeal breaks down into: (1) "an interpretive dispute" and (2) a "factual dispute." But the district court was wrong to hold that Anthem abused its discretion at either the interpretive or factual level.

1

On appeal, Rittinger challenges Anthem's *application* of the plan terms, but not Anthem's *interpretation*. (Her brief does not discuss the interpretive issue at all.) "It is a well worn principle that the failure to raise an issue on appeal constitutes waiver of that argument."[9] So she has forfeited her ability to defend the district court's ruling on the plan-interpretation issue.

The district court reasoned that Anthem's distinction between GERD/esophagitis and nausea/vomiting was "sophistic" and rendered Paragraph 33's exclusion "meaningless." And a construction that renders terms superfluous is "contrary to the provision's plain meaning."

---

[9] *United States v. Griffith*, 522 F.3d 607, 610 (5th Cir. 2008) (citing *United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000)).

No. 17-20646

Anthem challenges this reading, arguing that GERD/esophagitis and nausea/vomiting are not coterminous: Distinguishing between them does not render Paragraph 33's exception an empty set. Paragraph 33 specifically contemplates particular exceptions to its exclusion of bariatric and weight loss surgeries. It is wrong for a court to rewrite Paragraph 33 and insert a new exception for GERD/esophagitis—*expressio unius est exclusio alterius*.[10]

Anthem's construction makes sense. It fits with the plan's plain language. We ordinarily think of GERD/esophagitis and nausea/vomiting as two different things. In fairness, the district court had a point too: These could be partially overlapping categories. Imagine someone tells you, "I exclude pie from my diet, but I make an exception for holidays." Eating pie on Thanksgiving falls within that exception even though "Thanksgiving" and "holidays" are not coterminous categories. That is because the categories, Thanksgiving and holidays, have some overlap.

Perhaps Paragraph 33 is *best* interpreted like Thanksgiving and holidays—as creating a Venn diagram of categories where GERD/esophagitis and excessive nausea/vomiting have some overlap. But we are not asking what is the *best* construction of Paragraph 33. We are asking whether Anthem's construction was so egregiously wrong that it flouts the plan's plain language and constitutes an abuse of discretion. We cannot say that Anthem's interpretation of Paragraph 33 was so off-kilter as to be an abuse of discretion.

2

Where, as here, fiduciary discretion has been validly granted to the administrator, we review a "denial of ERISA benefits for abuse of discretion."[11]

---

[10] ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 107 (2012) ("The expression of one thing implies the exclusion of others.").

[11] *Corry*, 499 F.3d at 397 (quoting *Vega v. Nat'l Life Ins. Serv., Inc.*, 188 F.3d 287, 295 (5th Cir. 1999)). Again, *Ariana M.*, 884 F.3d 246 is inoperative because it deals with situations where Texas Insurance Code § 1701.062 renders a delegation clause invalid.

No. 17-20646

If "substantial evidence" supports Anthem's decision, then there was no abuse of discretion.[12] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[13] Abuse of discretion review "is the functional equivalent of arbitrary and capricious review."[14] "A decision is arbitrary if it is made without a rational connection between the known facts and the decision."[15] This review is deferential: We only need "assurance that the administrator's decision falls somewhere on a continuum of reasonableness—even if on the low end."[16]

Anthem argues that there was "more than a scintilla" of evidence to support the GAP's decision. Paragraph 33 explicitly excludes bariatric surgeries like Rittinger's. Thus, for Rittinger to have coverage, Paragraph 33's "excessive nausea/vomiting" exception must kick in. Davis Clinic's intake report from September 15—one month before Rittinger's surgery—notes that Rittinger's "chief complaint[s]" were "morbid obesity and abdominal pain." And that same report noted "no vomiting" and "no nausea." Rittinger's medical records up to the time of her surgery—records Rittinger herself attached to her preauthorization evaluation—do not reflect treatment for nausea and vomiting. Moreover, Rittinger's preauthorization documentation requests treatment for "morbid obesity" and was coded for obesity "due to excess calories," but does not indicate any excessive nausea or vomiting.

References to nausea and vomiting do not appear in the administrative record until after this coverage dispute began. And even when those terms turn up, two of Rittinger's prior medical providers do not mention nausea or

---

[12] *Id.* at 397–98 (quoting *Ellis*, 394 F.3d at 273).

[13] *Id.*

[14] *Anderson v. Cytec Indus., Inc.*, 619 F.3d 505, 512 (5th Cir. 2010).

[15] *Id.* (cleaned up).

[16] *Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 140 (5th Cir. 2016) (cleaned up).

vomiting per se but rather GERD and esophagitis. Claims that Rittinger has submitted to Anthem since early 2014—part of the GAP's administrative record—do not reflect treatment for nausea or vomiting.

Finally, Anthem argues that the GAP did not have to credit or give dispositive weight to Rittinger's evidence. Anthem recognizes that in the second-level appeal Rittinger submitted affidavits to the GAP from herself and two friends stating she had perpetually suffered from nausea and vomiting. She also submitted a doctor's letter from December 2014 (after the surgery) stating she had "severe persistent gastro-esophageal reflux with nausea and vomiting." Anthem contends that it recognized, but did not credit the after-the-fact, self-serving affidavits. Moreover, as plan administrator, Anthem was not duty-bound to defer to shifting medical opinions. Rittinger responds that Anthem did not just weigh evidence, it ignored her evidence altogether. As she sees it, Anthem's failure to even acknowledge her evidence deprived her of a "full and fair review."[17]

Candidly, it is hard to evaluate the GAP's decision because it does not elaborate its reasons for denial. There is no section where it discusses the evidence in the administrative record, the arguments the parties have made, or why it finds some evidence persuasive and some evidence not persuasive. It simply describes who was on the panel (five people who were not previously involved in assessing Rittinger's claim), states the panelists' qualifications, explains that Rittinger's surgery was bariatric, notes that this surgery falls squarely within Paragraph 33's exclusion, and recites Paragraph 33—including the excessive nausea/vomiting exception. We know what evidence was in the administrative record the GAP examined. But we do not know how it balanced and weighed that evidence.

---

[17] *See* 29 C.F.R. § 2560.503–1(h)(2).

No. 17-20646

The district court faulted Anthem for failing to submit more evidence to the GAP. It then reviewed the second-level-appeal evidence "[t]aken together," finding some "persuasive" and some "not persuasive." This was error. The district court was only supposed to review for abuse of discretion—i.e., did Anthem have more than a scintilla of evidence to support its decision? The district court was not supposed to weigh and balance the evidence.

Anthem did not need to supply original evidence or expert witnesses: It only needed to clear the low, more-than-a-scintilla threshold.[18] The five GAP members reviewed the evidence and determined Rittinger's initial surgery was "for weight loss and acid reflux," and not "excessive nausea/vomiting." It is rational, therefore, that Paragraph 33's exception did not apply.

We have said that, when faced with two competing medical views, a plan administrator may exercise discretion and choose one of them.[19] We routinely recognize that plan administrators deserve substantial discretion in their decisions.[20] And when a district court substitutes its own judgment for the plan administrator's, we reverse.[21]

*Gothard* is instructive here. There, a legal secretary suffered a permanent back injury in a car crash.[22] MetLife terminated her benefits because it found she could still perform sedentary work. The district court held this was arbitrary and capricious, but we reversed.[23] As Judge Higginbotham put it: "MetLife's decision may not be correct, but we cannot say that it was arbitrary."[24]

---

[18] *Corry*, 499 F.3d at 398.

[19] *Gothard v. Metro. Life Ins. Co.*, 491 F.3d 246, 249–50 (5th Cir. 2007).

[20] *See, e.g.*, *Burell*, 820 F.3d at 136–40.

[21] *See, e.g.*, *Gothard*, 491 F.3d at 247; *see also Holland*, 576 F.3d at 250–51.

[22] *Gothard*, 491 F.3d at 247.

[23] *Id.* at 247, 249–50.

[24] *Id.* at 250.

*Holland* provides another helpful guidepost.[25] There, the plan administrator considered all the evidence Holland submitted.[26] But the "Plan Administrator was not legally obligated to weigh any specific physician's opinion more than another's and did not abuse its discretion by crediting" some more than others.[27] Given *Holland*, Anthem did not have to credit Rittinger's post-surgery letters over her pre-authorization documentation and Anthem's consulting physician's opinion.

Multiple "scintillas" of evidence—Rittinger's medical record, her preauthorization report, Anthem's consulting physician's review, and the coding of Rittinger's other claims to Anthem—support the GAP's decision, even if other evidence is stronger or more "persuasive." Anthem did not abuse its discretion in the second-level appeal.

## IV

To sum up, Anthem did not abuse its discretion in either the first- or second-level appeal. Although not the paragon of procedural propriety, Anthem satisfied the very low, very deferential abuse-of-discretion standard. We thus AFFIRM the district court's assessment of the first-level appeal and REVERSE the district court's assessment of the second-level appeal. Rittinger is not entitled to any damages, so we DISMISS her cross-appeal as moot.

---

[25] *Holland*, 576 F.3d at 250–51.

[26] *Id.* at 250.

[27] *Id.*