# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 14, 2020

Lyle W. Cayce
Clerk

No. 19-51046

WILLIAM V., *as parent / guardian / next friend of* W.V., *a minor individual with a disability*; JENNY V., *as parent / guardian / next friend of* W.V., *a minor individual with a disability*,

*Plaintiffs—Appellants*,

*versus*

COPPERAS COVE INDEPENDENT SCHOOL DISTRICT,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:17-CV-201

Before SMITH, WILLETT, and DUNCAN, *Circuit Judges*.

PER CURIAM:*

Appellants contend that Appellee Copperas Cove Independent School District (the "District") violated the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401 *et seq.*, with respect to the

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 19-51046

educational services it provided their child, W.V. The district court granted the District's summary judgment motion. We affirm.

**I.**

W.V. was a student in the District with dyslexia and speech difficulties. When he entered the District in first grade, the District continued to implement a program W.V.'s previous school had developed to treat his speech impairment. W.V. was not considered to have a "Specific Learning Disability" ("SLD"), which would have required the District to provide additional services. *See* 20 U.S.C. § 1401(3)(A)(i) (providing a child is eligible for certain IDEA services if he has, *inter alia*, "specific learning disabilities"). During first grade, W.V.'s mother asked the District to evaluate him for an SLD. The District declined to do so, but it did test, and eventually treat, W.V. for dyslexia. The following school year, the District began providing W.V. assistance under the "Wilson Reading System." But later that fall, after reviewing W.V.'s performance in speech, reading, and cognitive capability, the District found that W.V. was no longer eligible for speech therapy and that his reading scores showed improvement consistent with his dyslexia counseling.

After exhausting appropriate state administrative remedies, *see Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 204–05 (1982), W.V.'s parents sued the District, alleging it violated the IDEA by delaying W.V.'s SLD assessment; concluding W.V. did not have an SLD or a speech and language impairment; failing to evaluate whether W.V. required "assistive technology"; and employing the Wilson Reading Program, which, they alleged, "did not demonstrate positive results" and "was not research-based." The parties cross-moved for summary judgment.

The district court granted summary judgment to the District, adopting in part the magistrate judge's report and recommendation. The

court held that the District "violated the IDEA by finding W.V. did not qualify as a student with an SLD." But the court concluded the violation was only "procedural" and did not deprive W.V. of a Free Appropriate Public Education ("FAPE") because his SLD status "did not result in the loss of [his] educational opportunities." The parents appealed, and we reversed and remanded, asking the district court to assess under the proper standard whether W.V. qualified as a "child with a disability." *William V. v. Copperas Cove Indep. Sch. Dist.*, 774 F. App'x 253, 254 (5th Cir. 2019). In particular, we asked the court to consider whether W.V. "need[ed] special education and related services," a necessary condition for IDEA coverage. *Id.* at 253 (quoting 34 C.F.R. § 300.8(a)(1)).

On remand, the district court followed our instructions and held W.V. needed special education services, thus qualifying as a "child with a disability." As it did previously, the court then found the District had procedurally violated the IDEA by finding W.V. had no SLD, but that this did not cause W.V. "a legally cognizable injury."[1] According to the court, the District's erroneous SLD determination did not harm W.V. because "the District continued providing W.V. with the same . . . services" and "kept W.V.'s [individualized educational program or 'IEP'] in place months after" it had determined he no longer had a SLD. Additionally, the court applied our four *Michael F.* factors, *see Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 253 (5th Cir. 1997),[2] to determine whether the District had

---

[1] The court also reiterated it had "accept[ed] and adopt[ed] the [magistrate's] Report and Recommendation in its entirety except as to" the SLD analysis.

[2] The factors ask whether "(1) the program is individualized on the basis of the student's assessment and performance; (2) the program is administered in the least restrictive environment; (3) the services are provided in a coordinated and collaborative manner by the key 'stakeholders'; and (4) positive academic and non-academic benefits are demonstrated." *Michael F.*, 118 F.3d at 253.

provided W.V. with a FAPE, concluding that the District's treatment of W.V. (1) was individualized, (2) was administered in "the least restrictive environment," (3) was "effectuated in a coordinated and collaborative manner by key stakeholders," and (4) "demonstrated positive academic and non-academic results." The court therefore again granted summary judgment to the District. A timely appeal followed.

## II.

We review the district court's fact findings for clear error and defer to those findings unless we have "a definite and firm conviction that a mistake has been committed." *Klein Indep. Sch. Dist. v. Hovem*, 690 F.3d 390, 395 (5th Cir. 2012) (quoting *Hous. Indep. Sch. Dist. v. V.P. ex rel. Juan P.*, 582 F.3d 576, 583 (5th Cir. 2009)). We review legal conclusions, including the ultimate liability conclusion, *de novo. Id.* (citing *Teague Indep. Sch. Dist. v. Todd L.*, 999 F.2d 127, 131 (5th Cir. 1993)). But factual conclusions, such as "[w]hether the student obtained educational benefits from the school's special education services," are reviewed for clear error. *Id.* (citing *Teague*, 999 F.2d at 131); *accord A.A. v. Northside Indep. Sch. Dist.*, 951 F.3d 678, 684 (5th Cir. 2020) (citation omitted)). The party attacking a school district's decisionmaking "bears the burden of demonstrating its non-compliance with IDEA." *Hovem*, 690 F.3d at 395 (citing *Teague*, 999 F.2d at 131).

## III.

Federally funded school districts must follow the IDEA's "substantive and procedural requirements," including the basic obligation of providing a FAPE for all disabled children. *William V.*, 774 F. App'x at 253 (citing *Honig v. Doe*, 484 U.S. 305, 310 (1988)); *see generally Endrew F. v. Douglas Cty. Sch. Dist.*, 137 S. Ct. 988, 993–94 (2017). The IDEA's core substantive requirement is that schools design and adhere to an IEP for each disabled student. *Honig*, 484 U.S. at 311. "The IEP is the means by which

special education and related services are 'tailored to the unique needs' of a particular child." *Endrew F.*, 137 S. Ct. at 994 (quoting *Rowley*, 458 U.S. at 181). In addition, the IDEA "establishes various procedural safeguards that guarantee parents both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate." *Honig*, 484 U.S. at 311–12. But procedural violations of the IDEA "alone do not constitute a violation of the right to a FAPE unless they result in the loss of an educational opportunity." *Hovem*, 690 F.3d at 396 (citation omitted).

To satisfy the IDEA, a school need not provide the best possible education or even "one that will maximize the child's educational potential." *Michael F.*, 118 F.3d at 247 (citation omitted). It must provide only "an education that is specifically designed to meet the child's unique needs, supported by services that will permit him 'to benefit' from the instruction." *Id.* at 247–48 (quoting *Rowley*, 458 U.S. at 188–89). "In other words, the IDEA guarantees only a 'basic floor of opportunity' for every disabled child, consisting of 'specialized instruction and related services which are individually designed to provide educational benefit.'" *Id.* at 248 (quoting *Rowley*, 458 U.S. at 201). But an IEP must be designed to achieve "meaningful," not "*de minimis*," progress. *Id.* (citations omitted); *see also Endrew F.*, 137 S. Ct. at 1001 (the IDEA "requires an educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances").

## A.

Appellants argue the district court erred when it found the District's failure to classify W.V. as having an SLD did not deny him educational opportunities. Specifically, they contend the district court (1) failed to give adequate weight to W.V.'s lack of progress under his IEP, (2) failed to find

the District did not use research-based methods, and (3) misapplied the four *Michael F.* factors. We address each argument in turn.

**1.**

Appellants contend the district court failed to "conduct[] its own analysis to consider W.V.[']s regression and lack of progress." They claim the court relied too heavily on W.V.'s grades and reading level assessments. They also argue W.V.'s scores on standardized tests were "stagnant and far below grade level."

Appellants fail to show reversible error. The district court and the magistrate judge, whose report and recommendation the court adopted in relevant part, addressed W.V.'s grades and standardized tests at great length, rejecting the same arguments Appellants now raise on appeal. For example, the magistrate rejected the argument concerning W.V.'s failure to meet grade-level standards on standardized tests, finding that these measures "compare[d] W.V. to his peers and [did] not address standards particular to W.V.'s personal improvements or regression." The magistrate instead identified meaningful development in W.V.'s progress reports, relying on these to conclude he had made more than *de minimis* progress under his IEP. The district court adopted these findings and, based on extensive evidence of progress in speech and reading skills, found the District had complied with the IDEA. Appellants' briefing in our court largely repeats their arguments in the district court and scarcely acknowledges the district court's (and the magistrate's) reasoning. For example, the magistrate and district court both relied heavily on *Houston Independent School District v. Bobby R.*, in which we emphasized that under the IDEA, a student's development must be measured with respect to him, not other students. 200 F.3d 341 (5th Cir. 2000). On appeal, Appellants do not address *Bobby R.* or provide any argument that the district court erred in its application of our precedent. Nor

do they show clear error in the district court's findings that "W.V. was continuously progressing in the general education setting" in areas such as reading, writing, and math.

Moreover, while the district court's ultimate conclusion that the District complied with the IDEA is reviewed *de novo*, we review underlying factual conclusions only for clear error. *Hovem*, 690 F.3d at 395 (citation omitted). The magistrate and the district court thoroughly addressed each of the arguments Appellants now raise and weighed evidence of W.V.'s progress accordingly. We cannot upend the district court's conclusions merely because Appellants believe it should have weighed the evidence differently. Based on Appellants' arguments and our own review of the record, we lack "a definite and firm conviction that a mistake has been committed." *Id.* (citation omitted).

**2.**

The same is true of Appellants' second argument, that the district court ignored their contention that the District failed to employ "research-based" programs. Appellants contended that the Wilson Reading System was not research-based and that, in any case, "research does not support its use for children, such as W.V., with severe dyslexia." The district court rejected both arguments. For instance, the court found that the Wilson program, to which W.V.'s parents had consented, was "a structured, research-based program that comports with the Texas Dyslexia Handbook." The court also cited ample evidence of W.V.'s improvement under the Wilson program in terms of, for example, conversational speech accuracy and reading comprehension. Appellants fail to address this analysis. Moreover, the district court expressly rejected expert testimony that the Wilson program was inadequate for W.V.'s needs because the testimony contradicted the evidence of W.V.'s improvement. Appellants rely on that

No. 19-51046

same testimony on appeal without explaining why the district court clearly erred in rejecting it. Accordingly, Appellants have again failed to show clear error.

**3.**

Finally, Appellants contend the district court misapplied three of the four *Michael F.* factors. *See supra* n.1. They admit they failed to "directly address" the first factor before the district court—namely, whether W.V.'s program was individualized. Their argument as to that factor is forfeited. *Rittinger v. Healthy All. Life Ins. Co.*, 914 F.3d 952, 955 (5th Cir. 2019) (citation omitted). They also fail to develop an independent argument as to the fourth factor—whether W.V. benefited from his IEP—referring only to their previous argument regarding W.V.'s academic progress, which the District, the Special Education Hearing Officer ("SEHO"), the magistrate, the district court, and now this panel have all rejected. As to the third factor—whether the IEP was effectuated in a "collaborative manner"— Appellants show no clear error in the district court's conclusion that they were involved extensively in forming and executing W.V.'s IEP. The record reflects, for example, that Appellants were invited to and participated in several meetings to discuss W.V.'s IEP and that the District regularly kept them apprised of his progress. We therefore find no reversible error in the district court's application of the *Michael F.* factors.

**B.**

We next address Appellants' contention that the district court erred by failing to treat three other District actions as procedural IDEA violations. Namely, they argue that the court failed to address (1) whether the District unduly delayed W.V.'s Full and Individual Evaluation (or "FIE"), *see* 20 U.S.C. § 1414(a)(1)(A); (2) whether W.V. had a speech impairment, and (3)

8

whether the District improperly failed to evaluate whether W.V. needed assistive technology.

Yet again, Appellants' briefing merely reiterates the same arguments made before the district court and attacks the court's fact findings without demonstrating clear error. For example, they claim the district court "without discussion" rejected their argument that the District unduly delayed W.V.'s FIE. This is incorrect. The magistrate devoted several pages to the issue, concluding that "the record demonstrates a logical chain of progression from W.V.'s first day in the District to his FIE testing a year later." The magistrate concluded that the District adopted a previous school's IEP and that the District had ample evidence that "W.V. appeared to be progressing." And the magistrate similarly rejected Appellants' argument that the District should have suspected a need for special education "in September 2015, the month W.V. entered the District." Appellants fail to identify clear error in these fact-bound conclusions.

Appellants' second argument, that the district court failed to address whether W.V. had a speech and language impairment, similarly ignores detailed fact findings. For example, Appellants repeat the argument that the District revoked W.V.'s impairment status based solely on a five-minute assessment. The magistrate addressed this contention at length, finding the District's speech pathologist worked with W.V. five times per week, for thirty minutes per meeting, per six-week grading period. Furthermore, the magistrate made extensive findings regarding the speech pathologist's qualifications and interactions with W.V., none of which Appellants address on appeal.

The same is true for Appellants' final argument, that the district court "fail[ed] to address the argument that" the District should have evaluated W.V. for assistive technology. That is incorrect. The magistrate's report and

No. 19-51046

recommendation analyzed this argument extensively, concluding that Appellants "fail[ed]" the first prong of the relevant analysis "by disregarding . . . entirely" their burden to prove that W.V. needed assistive technology for his FAPE. *See* 34 C.F.R. § 300.105. Appellants fail to show reversible error as to this conclusion.[3]

AFFIRMED.

---

[3] Because we conclude the district court did not reversibly err in holding that the District evaluated W.V. properly, we need not address Appellants' argument that the District should have reimbursed them for private evaluations.